Filed 10/29/15  P. v. Espinosa CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041735 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1478879) |
| v. | |
| ROBERTO RODRIGUEZ ESPINOSA, | |
| Defendant and Appellant. | |

In 2014, defendant Roberto Espinosa pleaded no contest to 10 counts of lewd or lascivious acts on a child under the age of 14 (Pen. Code, § 288, subd. (a)).  (Unless otherwise stated, all further statutory references are to the Penal Code.)  The offenses involved a single victim and occurred on or between January 1, 1995, and December 8, 1997 (more than 16 years before defendant was arrested).  Pursuant to a plea agreement, the court sentenced defendant to nine years in prison.  It also imposed various fines and fees, including a $300 sex offender fine (§ 290.3) and $930 in unspecified penalty assessments attached to that fine.

On appeal, defendant contends the amount of the section 290.3 fine should be reduced from $300 to $100, which he asserts was the amount of the fine authorized by section 290.3 when he committed his offenses.  The Attorney General agrees that the

court imposed the wrong amount for the sex offender fine, but argues that the correct amount of the fine at the time of defendant's offenses was $200.

Defendant also contends the trial court erred in calculating the amount of penalty assessments attached to the sex offender fine. And he argues that the court erred in imposing five of the seven penalty assessments, since those penalty assessments were enacted after he committed his offenses and could not be imposed on ex post facto grounds. The Attorney General agrees that only two of the penalty assessments were authorized at the time of defendant's crimes.

Citing this court's decision in *People v. Hamed* (2013) 221 Cal.App.4th 928 (*Hamed*), defendant also argues that the court erred because it failed to specify the amount and statutory basis for each of the penalty assessments imposed. The parties urge us to remand this matter to the trial court to correct the amount of the penalty assessments that apply, to strike the penalty assessments that do not apply, and to prepare a corrected abstract of judgment.

We conclude that since defendant committed more than one offense to support imposition of the sex offender fine, the $300 fine imposed by the trial court was authorized by the version of section 290.3 in effect at the time of defendant's offenses. We also conclude that five of the seven penalty assessments that the court presumably imposed as part of the $930 it ordered in penalty assessments should be stricken on ex post facto grounds. We will therefore modify the judgment and reduce the amount of the penalty assessments from $930 to $510 (the amount of the penalty assessments that were properly imposed), and will affirm the judgment as modified. We will also direct the clerk to prepare an amended abstract of judgment that states the amount and statutory basis for the penalty assessments, in accordance with the procedures in *Hamed*.

## FACTS

Since this matter was resolved before the preliminary hearing, our statement of facts is based on information in the probation report.

In March 2014, an investigating deputy district attorney and an investigating officer from the Milpitas Police Department met with defendant's ex-wife, who had been identified as a character witness in another criminal matter involving defendant. Defendant's ex-wife told the investigators that in addition to a history of domestic violence, defendant was unfaithful, and she had caught him with other women more than once. Defendant's ex-wife said, " 'he likes young girls,' " and told the investigators defendant had had inappropriate sexual contact with her female cousin (Victim) many years before when Victim was 12 years old. Victim, who was an adult in 2014, was present when the investigators spoke to defendant's ex-wife. Victim agreed to be interviewed, too.

Victim told the investigators that she had sexual intercourse with defendant at least 10 times at the residence her family shared with defendant and his ex-wife. The sexual encounters began in early 1995, when Victim was 11 or 12 years old, and continued until late 1997. Defendant was 22 or 23 years old when the sexual encounters started.

Victim said defendant manipulated and " 'brain-wash[ed]' " her. He told Victim, " 'it will help if I teach you.' " Defendant groomed Victim by repeatedly paying her compliments and telling her she was the most beautiful person he had ever seen. He told her if she had sex with him, he would be preparing her for the future: she would be a better wife, a better woman, and a better lover. Victim looked up to defendant; she saw him as a father figure since her parents were always away working. This grooming process lasted approximately two months before the first incident.

The first time they had sex, defendant kissed Victim in his bedroom and removed her clothing. He repeatedly said everything would be " 'ok.' " Defendant convinced

3

Victim to orally copulate him, saying she needed to learn how to give oral sex. Victim said defendant digitally penetrated her vagina on several occasions prior to having intercourse with her. She also said defendant was adamant that he did not want anyone to know about their sexual encounters. When Victim mentioned defendant's ex-wife, defendant said, " 'she doesn't have to know.' " But at some point, defendant's ex-wife caught them embracing in the bathroom. Defendant denied any wrongdoing, and the incident was never mentioned again. Defendant did not have sexual intercourse with Victim after that incident.

On March 14, 2014, police officers contacted defendant at his residence. Although defendant admitted to residing with Victim approximately 18 years earlier, and to hugging her, he denied any wrongdoing and declined to answer further questions without his attorney present. The officers arrested defendant and placed him in custody that same day.

## PROCEDURAL HISTORY

On March 18, 2014, the prosecution filed a felony complaint, charging defendant with 10 counts of lewd or lascivious acts on a child under the age of 14 (§ 288, subd. (a)). Each count was alleged to have involved Victim and to have occurred on or between January 1, 1995, and December 8, 1997. The complaint alleged that at the time of the offenses, Victim was 11 to 14 years old and that the crimes involved substantial non-mutual sexual conduct as described in section 1203.066, subdivision (b). The complaint also alleged there was independent evidence that clearly and convincingly corroborated Victim's allegations.

Prior to his arrest in this case, defendant was charged in another matter with two misdemeanor counts of sexual battery (§ 288, subd. (c)(1)) involving a 15-year-old female family member, after he allegedly fondled her breasts and buttocks. That case went to trial shortly after defendant was arrested in this case. The jury acquitted

4

defendant on one count and convicted him of the lesser offense of simple assault (§ 240) on the other count.

On September 22, 2014, the parties entered into a negotiated disposition of this case. Defendant pleaded no contest to all ten counts in exchange for an indicated sentence of nine years, "top bottom." Defendant had been facing a maximum sentence of 26 years.

On October 21, 2014, the court sentenced defendant to nine years in prison, to be followed by a 10-year period of parole. The court also ordered defendant to pay fines and fees, including: (1) the minimum restitution fund fine of $200 (§ 1202.4); (2) a sex offender fine of $300 (§ 290.3), plus penalty assessments; (3) a court security fee of $300 based on 10 convictions (§ 1465.8); (4) a criminal conviction assessment of $300 (Gov. Code, § 70373); and (5) a criminal justice administration fee of $129.75 (§§ 29, 550, 550.1, and 550.2). The court also imposed, but suspended, a minimum parole revocation restitution fine of $200 (§ 1202.45) and ordered defendant to register as a sex offender (§ 290).

The amount and statutory basis for each of the penalty assessments imposed on the section 290.3 fine was not set forth in the probation report, in the minute order of the sentencing hearing, orally at the time of sentencing, or on the abstract of judgment. Neither party filed a sentencing memorandum that set forth this information. Both the minute order and the abstract of judgment state that the court imposed "PA $930" pursuant to "PC 290.3," which we interpret to mean penalty assessments of $930 attached to the section 290.3 fine.

## DISCUSSION

Defendant challenges the amount of the section 290.3 sex offender fine ($300), and the amount ($930) and type of penalty assessments imposed in conjunction with that fine. He contends the amount of the section 290.3 base fine should be $100, which he

asserts was the amount authorized by section 290.3 for a first offense from 1995 through 1997, when he committed the offenses in this case. Defendant also contends the trial court erred in calculating the amount of the penalty assessments on the sex offender fine. And he argues, on ex post facto grounds, that the court erred in imposing five of the seven penalty assessments, since those penalty assessments were enacted after he committed the offenses in this case. Defendant contends the correct amount of the two applicable penalty assessments is $170.

The Attorney General agrees that the court imposed the wrong amount for the sex offender fine, but argues that the correct amount at the time of defendant's offenses was $200 for a first offense. And she agrees that only two of the seven penalty assessment were authorized at the time of defendant's offenses, but argues that the correct amount of those penalty assessments is $340.

Both parties ask us to remand to the trial court to correct the amounts of the base fine and the penalty assessments and to strike the penalty assessments that do not apply. Citing *Hamed*, defendant also argues that the court clerk erred by failing to specify the amount and statutory basis for each of the penalty assessments imposed in the minute order and the abstract of judgment.

### *The Section 290.3 Base Fine*

#### **Ex Post Facto Principles and Applicable Version of Section 290.3**

" '[T]he ex post facto clauses of the state and federal Constitutions are "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.' " ' [Citation.]" (*People v. Alford* (2007) 42 Cal.4th 749, 755.) A prohibited ex post facto law is one that increases a punishment retroactively beyond that applicable at the time the crime was committed. (*People v. High* (2004) 119 Cal.App.4th 1192, 1195 (*High*).) When a statute is challenged as a prohibited ex

post facto law, we must first determine whether a penal law is involved, because the prohibition against ex post facto laws applies only to statutes imposing penalties. (*High*, at p. 1196, citing *Trop v. Dulles* (1958) 356 U.S. 86, 95-96.) Fines imposed under section 290.3 are punitive and are therefore subject to the prohibition against ex post facto laws. (*People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248.) Under ex post facto principles, the assessable amount of a fine is calculated as of the date of the offense. (*Ibid.*, citing *People v. Saelee* (1995) 35 Cal.App.4th 27, 30.)

At the time defendant committed his crimes—on or between January 1, 1995 and December 8, 1997—former section 290.3 provided: "(a) Every person who is convicted of any offense specified in subdivision (a) of Section 290 shall, in addition to any imprisonment or fine, or both, imposed for violation of the underlying offense, be punished by a fine of two hundred dollars ($200) upon the first conviction or a fine of three hundred dollars ($300) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine." (Stats. 1994, ch. 866, § 1, p. 4355 [AB 304], ch. 867, § 3.5, p. 4395 [AB 2500]; Stats. 1995, ch. 91, § 121, pp. 346-347.) Defendant was found guilty of 10 counts of violating section 288, subdivision (a), which is an offense specified in subdivision (c) of section 290. (§ 290, subd. (c).) He does not dispute that he is subject to the section 290.3 fine. " 'Under the statutory language of section 290.3, imposition of the fine is mandatory, "unless the court determines that the defendant does not have the ability to pay the fine." ' " (*People v. Burnett* (2004) 116 Cal.App.4th 257, 261 (*Burnett*), quoting *People v. McMahan* (1992) 3 Cal.App.4th 740, 749.)

**Standard of Review**

To the extent this appeal requires us to interpret the language of section 290.3 and other statutes, the interpretation of a statute is a question of law, which we decide de novo. (*People v. Riley* (2015) 238 Cal.App.4th 1016, 1026, citing *People ex rel. Lockyer v. Shamrock Foods Co*. (2000) 24 Cal.4th 415, 432.)

7

**Amendment of Section 290.3**

Section 290.3 was enacted in 1988, and took effect on January 1, 1989. (Stats. 1988, ch. 1134, § 1.) When originally enacted, and until December 31, 1994, the amount of the section 290.3 fine was "one hundred dollars ($100) upon the first conviction or . . . two hundred dollars ($200) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine." (Stats. 1988, ch. 1134, § 1; Stats. 1994, ch. 866, § 1, p. 4355, ch. 867, § 3.5, p. 4395.) This appears to be the version of the statute defendant relies on in arguing that the correct amount of the fine was $100 for a first offense.

But in 1994, former section 290.3 was amended and the amount of the fine was increased, as noted above, to "two hundred dollars ($200) upon the first conviction or . . . *three hundred dollars ($300) upon the second and each subsequent conviction*" with the same ability to pay exception. (Stats. 1994, ch. 866, § 1, p. 4355 , ch. 867, § 3.5, p. 4395; italics added.) This is the version of the statute the Attorney General relies on in arguing that the correct amount of the section 290.3 fine was $200 for a first offense.

Effective September 20, 2006, section 290.3 was amended again and the fine was increased to "*three hundred dollars ($300) upon the first conviction* or . . . five hundred dollars ($500) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine." (Stats. 2006, ch. 337, § 18, eff. Sept. 20, 2006, italics added; *People v. Walz* (2008) 160 Cal.App.4th 1364, 1368, fn. 6 (*Walz*).)

**Analysis**

As we have noted, the trial court imposed a section 290.3 fine of $300. Both parties agree that this fine must be in an amount authorized by the statute in effect at the time of defendant's offenses. The parties both assert that the correct amount of the fine is the

statutory amount applicable to a first offense. Defendant argues that "because [he] had not been previously convicted of a sex offense, . . . the trial court should have imposed a $100 sex offender base fine because that was the amount of the fine for a first offense in 1995 through 1997, when the charged offenses occurred." The Attorney General agrees that "the fine for a first-time offender" must be imposed, but asserts that the correct amount of the fine is $200. The Attorney General suggests that "[t]he trial court may have inadvertently imposed a second-offense fine of $300 based on the erroneous characterization in the probation report of [defendant's] prior conviction." Indeed, the probation officer reported that defendant had previously been convicted of one count of sexual battery (§ 288, subd. (c)(1))—an offense that requires imposition of the sex offender fine—when in fact defendant was convicted of simple battery, an offense that does not trigger the sex offender fine. (§§ 290.3, 290, subd. (c).)

Regardless of the nature of his previous conviction, defendant was convicted of 10 counts of violating section 288, subd. (a) in *this* case. Each such count supported imposition of the section 290.3 fine. In *People v. O'Neal* (2004) 122 Cal.App.4th 817 (*O'Neal*), the court held that each qualifying conviction in a single proceeding constitutes a separate conviction for the purposes of imposing the section 290.3 fine. (*Id.* at p. 822; see also *Walz*, *supra*, 160 Cal.App.4th at p. 1371 [following *O'Neal*].) The defendant in *O'Neal* was convicted of two offenses that were subject to the section 290.3 sex offender fine. The trial court imposed two sex offender fines plus penalty assessments. (*O'Neal*, at p. 822.) On appeal, the defendant argued that the court should have imposed only one section 290.3 fine and that "multiple fines for multiple convictions in the same case are prohibited." (*O'Neal*, at p. 822.) The appellate court disagreed and held that the "statute does not limit the number of fines that may be imposed for multiple convictions in the same case." (*Ibid.*) Interpreting section 290.3, the court explained: "the statute refers to fines for *convictions*, not fines for proceedings," and since the defendant pleaded guilty to two counts, "[e]ach count involved a separate *conviction*." (*Ibid.*; italics added.) Thus, the defendant in that case "had a second or

9

subsequent conviction under section 290.3." (*Ibid.*) We agree with the interpretation of section 290.3 in *O'Neal*. We also note that no published case has disagreed with *O'Neal* since it was filed in 2004. (See e.g., *Walz*, *supra*, 160 Cal.App.4th at p. 1371.)

Under the version of section 290.3 in effect at the time of defendant's offenses, the court was required to impose a fine "of two hundred dollars ($200) upon the first conviction or . . . three hundred dollars ($300) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine." (Former section 290.3, subd. (a).) Thus, under former section 290.3 and *O'Neal*, the trial court was required to impose a fine of $2,900 ($200 for the first count and $300 each for the other nine counts), plus applicable penalty assessments on that amount, unless it found defendant did not have the ability to pay the fine. Here, the court imposed a fine of $300, which was less than the amount authorized by section 290.3.

"Because factual issues come into play in determining whether a defendant has the ability to pay the section 290.3 fine, the failure to impose the fine is 'not correctable without considering factual issues presented by the record or remanding for additional findings.' [Citations.] On a silent record, we presume the trial court determined that defendant did not have the ability to pay and thus should not be compelled to pay the fine. [Citations.] This presumption is a logical extension of the rule 'concerning the presumption of regularity of judicial exercises of discretion apply[ing] to sentencing issues.' [Citations.] We presume the court lawfully performed its duty in imposing sentence. [Citations.]" (*Burnett*, *supra*, 116 Cal.App.4th at p. 261.)

In *People v. Clark* (1992) 7 Cal.App.4th 1041, 1050, for example, the trial court imposed a drug program fee (Health & Saf. Code, § 11372.7), but the record was silent as to the defendant's ability to pay. The appellate court presumed the trial court found the defendant had the ability to pay the fee. On a similarly silent record, the court in *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1516–1518 held that a judgment that fails to impose

10

the drug program fee was legally authorized because it is presumed the trial court found the defendant did not have the ability to pay. (*Burnett*, *supra*, 116 Cal.App.4th at pp. 261-262.)

In this case, defendant declined to be interviewed by the probation officer and the probation report does not contain any information regarding his education, training, employment history, family status, or other matters that would be relevant to the question of his ability to pay. And the record does not reflect that defendant ever presented any evidence on the question of his ability to pay fines and fees. On this silent record, we will presume the court concluded that defendant had the ability to pay a sex offender fine in the amount of $300, and did not have the ability to pay the full $2,900 fine otherwise required by section 290.3.

We find support for this conclusion in the fact that the court imposed a restitution fine of $200, as opposed to the maximum restitution fine of $10,000 authorized by former section 1202.4, subdivisions (b) and (c). Under that section, the court had the discretion to impose a restitution fine of "not . . . less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000)" or to waive the restitution fine if it found "compelling and extraordinary reasons related to the defendant's ability to pay" and stated those reasons on the record. (Stats. 1994, ch. 46 (1st Ex. Sess.), § 4, p. 8756.) The formula in former subdivision (b) of the statute supported imposition of a $10,000 restitution fine based on defendant's multiple felony counts and the number of years of imprisonment imposed. (Stats. 1995, ch. 313, § 5, pp. 1755-1756.) The court nonetheless chose to impose the minimum $200 fine; it also did not exercise its discretion to waive the fine.

Similarly, with regard to the section 290.3 sex offender fine, the court chose to impose an amount between the statutory minimum of $200 and the $2,900 otherwise required. Moreover, since defendant was convicted of multiple counts that triggered the sex offender fine, it was reasonable for the court to impose an amount greater than the amount authorized for a single, first conviction.

11

For these reasons, we reject defendant's contention that the section 290.3 sex offender fine must be reduced to $100, as well as the Attorney General's contention that it must be reduced to $200. Since the court's order to pay a $300 section 290.3 sex offender fine was made within the lawful bounds of former section 290.3, there was no ex post facto violation.

## Penalty Assessments

Defendant contends that since the amount of the base fine is incorrect, the amounts of the penalty assessments, which are based on the amount of the base fine, are also incorrect. He argues that certain penalty assessments may not be applied to the section 290.3 fine retroactively without violating the prohibition against ex post facto laws because those penalty assessments were enacted after defendant committed the offenses in this case. Finally, he contends the trial court erred by imposing $930 in penalty assessments without specifying the amount or statutory basis for each of the assessments imposed. Citing this court's decision in *Hamed*, *supra*, 221 Cal.App.4th 928, defendant argues it would have been proper for the trial judge to order penalty assessments and the clerk to later specify the statutory authority for and amount of the penalty assessments in the minutes and abstract, but this was never done.

There are seven assessments, surcharges, and penalties that are "parasitic to an underlying fine that could increase the fine." (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1374 (*Voit*).) Although the record does not disclose the statutory basis for or the amount of any of the penalty assessments imposed in this case, based on the amount of the penalty assessments ($930), we conclude the court imposed the following seven penalty assessments on the $300 section 290.3 base fine: "(1) a 100 percent state penalty assessment (§ 1464, subd. (a)(1)) equal to $300; (2) a 70 percent additional penalty (Gov. Code, § 76000, subd. (a)(1)) equal to $210; (3) a 20 percent state surcharge (§ 1465.7) equal to $60; (4) a 50 percent state court construction penalty (Gov. Code, § 70372) equal to $150; (5) a 20 percent additional penalty for emergency medical services (Gov. Code,

12

§ 76000.5) equal to $60; (6) a 10 percent additional DNA penalty (Gov. Code, § 76104.6, subd. (a)(1)) equal to $30; and (7) a [40] percent additional state-only DNA penalty (Gov. Code, former § 76104.7) equal to [$120]." (*Hamed*, *supra*, 221 Cal.App.4th at pp. 940-941 & fn. 8; fns. omitted.)

The parties do not dispute that defendant's section 290.3 fine is subject to two of the seven penalty assessments listed above, since the statutes imposing those two penalty assessments were enacted before defendant committed the offenses in this case. This includes the 100 percent section 1464, subdivision (a)(1) state penalty assessment (effective June 30, 1991) and the 70 percent county penalty assessment under Government Code section 76000 (effective July 29, 1991). (Stats. 1991, ch. 90, § 60, pp. 405, 451, 466; Stats. 1991, ch. 189, § 11, pp. 1430, 1438, 1482.)

The parties do, however, dispute the amount of these two penalty assessments. Defendant argues that since the amount of the base fine must be reduced to $100, these penalty assessments should be reduced to $100 and $70 respectively. The Attorney General argues that since the correct amount of the base fine is $200, these penalty assessments should be reduced to $200 and $140 respectively. Since we hold that the court properly imposed a base fine of $300, the correct amounts for these two penalty assessments are $300 (§ 1464, subd. (a)(1)) and $210 (Gov. Code, § 76000).

We agree with the parties that several of the penalty assessments took effect after defendant's crimes were committed between January 1, 1995 and December 8, 1997. In *High*, the court concluded that the state surcharge in section 1465.7, subdivision (a) (effective September 30, 2002) and the state court construction penalty in Government Code section 70372 (effective January 1, 2003) constitute ex post facto laws for crimes committed prior to their effective dates, and cannot be constitutionally applied retroactively. (*High*, *supra*, 119 Cal.App.4th at pp. 1197-1199 & 1197, fn. 2; *Voit*, *supra*, 200 Cal.4th at p. 1374.) Following *High*, the court in *People v. Batman* (2008) 159 Cal.App.4th 587 (*Batman*), concluded that the Government Code section 76104.6, subdivision (a)(1) DNA penalty

13

assessment (effective November 3, 2004) is punitive and cannot be applied retroactively. (*Batman*, at pp. 590-591; *Voit*, at p. 1374.) Based on the logic of *High* and *Batman*, this court held in *Voit* that the emergency medical services penalty under Government Code sections 76000.5, subdivision (a)(1) (effective January 1, 2007) and the DNA penalty under Government Code section 76104.7 (effective July 12, 2006) also cannot be imposed retroactively on crimes committed prior to their effective dates. (*Voit*, at p. 1374.) Since each of these five penalty assessments became effective after defendant committed the offenses in this case, they cannot be applied retroactively to defendant.

Accordingly, the only penalty assessments applicable to defendant's $300 section 209.3 fine are the 100 percent penalty assessment under section 1464 and the 70 percent penalty under Government Code section 76000. As we have stated, the correct amounts of these penalty assessments are $300 and $210 respectively, for a total of $510 in penalty assessments.

Finally, defendant argues that the trial court erred when it imposed $930 in penalty assessments without specifying the amount or statutory basis for each penalty assessment imposed. He argues it would have been proper for the trial court to order penalty assessments and to direct the clerk to later specify the amount in the minutes and abstract, but this was never done. He urges us to remand to the trial court to amend the abstract of judgment.

In *Hamed*, this court observed that prior cases addressed "two different aspects of the sentencing process: (1) the oral pronouncement of judgment by the sentencing judge, and (2) the preparation of the abstract of judgment by the court clerk." (*Hamed*, *supra*, 221 Cal.App.4th at p. 938, citing *High*, *supra*, 119 Cal.App.4th at p. 1200 and *People v. Sharret* (2011) 191 Cal.App.4th 859 (*Sharret*).) *High* held that a sentencing court should make a "detailed recitation of all the fees, fines and penalties on the record" and requires that "[a]ll fines and fees must be set forth in the abstract of judgment." (*High*, at p. 1200.) The *High* court recognized that such a detailed recitation "may be tedious," but

14

stated, "California law does not authorize shortcuts." (*Ibid*.) *Sharret* affirmed the imposition of a fine where the court, in its oral pronouncement of judgment, stated the amount of the base fine, its statutory basis, and used the shorthand reference " 'plus penalty assessment.' " (*Sharret*, at p. 864, italics omitted.) But *Sharret* also required "the trial court clerk to specify the penalties and surcharge in appropriate amounts in the minutes and, more importantly, the abstract of judgment." (*Ibid*.)

As this court observed in *Hamed*, "[a]ppellate courts are often called upon to correct sentences that contain errors in fines and penalty assessments." (*Hamed*, *supra*, 221 Cal.App.4th at p. 939.) In *Hamed*, the court explained: "A detailed description of the amount of and statutory basis for the fines and penalty assessments imposed would help the parties and the court avoid errors in this area. For example, if the probation report in [*Hamed*] had contained a detailed list of the component parts of the sex offender fine and the penalty assessments attached thereto, perhaps one of the parties would have caught the $30 error that [was] the subject of [that] appeal. A trial court could recite the amount and statutory basis for any base fine and the amounts and statutory bases for any penalty assessments on the record, as *High* suggests should be done. (*High*, *supra*, 119 Cal.App.4th at p. 1200.) Or, in cases where the amounts and statutory bases for the penalty assessments have been set forth in a probation report, a sentencing memorandum, or some other writing, the court could state the amount and statutory basis for the base fine and make a shorthand reference in its oral pronouncement to 'penalty assessments as set forth in the' probation report, memorandum, or writing . . . . (See *Sharret*, *supra*, 191 Cal.App.4th at p. 864; *Voit*, *supra*, 200 Cal.App.4th at p. 1373.) By itemizing and listing the component parts of base fines and penalty assessments prior to sentencing, the parties would have an opportunity to identify and correct errors in the trial court, avoiding unnecessary appeals." (*Hamed*, at pp. 939-940.)

In *Hamed*, this court agreed with the procedure suggested in *High*. But the court suggested an alternative procedure that requires the preparation of a writing *prior to*

15

*sentencing* that sets forth the statutory basis and amounts of each penalty assessment. We concluded that in cases where there is such a writing, it would be appropriate for the trial court to use the shorthand reference "plus penalty assessments" when pronouncing sentence since the penalty assessments had been set forth in the writing. In our view, if there is no such writing, then the court should follow the procedure set forth in *High* and specify the amounts and statutory basis for the penalty assessments orally on the record.

In this case, the probation report recommended a "fine of $300.00 plus penalty assessment[s] be imposed pursuant to section 290.3." The probation report did not, however, state the statutory bases or proposed amounts of the penalty assessments. And neither party filed a sentencing memorandum that contained that information. Thus, none of the parties prepared the presentencing writing required by *Hamed*.

The trial judge imposed the $300 fine plus penalty assessments, but did not specify the amount or which assessments were being imposed. The record suggests the court clerk determined the amount of the penalty assessments when preparing the minute order and abstract of judgment by multiplying the amount of the section 290.3 fine by 310 percent. But neither the minute order nor the abstract of judgment sets forth the statutory basis or amount of the individual penalty assessments.

*Hamed* observed that "both *High* and *Sharret* require the court clerk to list the amount and statutory basis for each base fine and the amount and statutory basis for each penalty assessment in the abstract of judgment. As the court stated in *High*, this assists the Department of Corrections and Rehabilitation to 'fulfill its statutory duty to collect and forward deductions from prisoner wages to the appropriate agency.' " (*Hamed*, *supra*, 221 Cal.App.4th at p. 940, quoting *High*, *supra*, 119 Cal.App.4th at p. 1200.) This was not done in this case.

Although the parties urge us to remand this matter to the trial court, we conclude we may correct the sentencing error here by modifying the judgment without the need for further hearing in the trial court.

16

## DISPOSITION

The judgment is modified as follows: (1) defendant is ordered to pay the following penalty assessments on the $300 section 290.3 fine: a $300 state penalty assessment (§ 1464, subd. (a)(1)) and a $210 additional penalty (Gov. Code, § 76000, subd. (a)(1)); (2) the aggregate amount of the penalty assessments is reduced from $930 to $510. As so modified, the judgment is affirmed.

The clerk of the trial court is directed to prepare an amended abstract of judgment that sets forth (1) the amount of ($300) and statutory basis for (§ 290.3) the sex offender fine; and (2) the amount of and statutory basis for the two penalty assessments set forth in the previous paragraph. The clerk shall send a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation and to the Santa Clara County Probation Department.

_____
Márquez, J.

WE CONCUR:

_____
 Rushing, P. J.

_____
Grover, J.

No. H041735
People v. Espinosa